IP v. 1-800-Flowers. Mr. Bedard. Good morning, Your Honors. May it please the Court, Edward Bedard on behalf of the Edible Appellants, and I'm fully aware I'm in the unenviable position of keeping you and your clerks from lunch, so I'll hop right in. As the Court's aware, this is an appeal from a summary judgment order in which the Court's order addressed effectively one argument, which was the release and res judicata. I think they go together in the application of those arguments to the claims at issue in the Court. So that really raises two issues in this appeal. One, what to do about the breach of contract claim that's hanging out there and the effect on this Court's jurisdiction, and then two, whether the Court's analysis of the release and res judicata arguments were correct. I'll start with the first because it seems fairly straightforward. Do you agree that 1-800 moved for summary judgment on the breach of contract claim? I'm not asking you whether their arguments were sufficient, substantiated, or anything else, but in their moving papers, did they not ask for summary judgment across the board? They did ask for summary judgment across the board. They have one reference and one parenthetical effectively on page 22 to the breach of contract claim. It's the only time it's mentioned in their motion, but I take it at face value they moved for summary judgment, not for partial summary judgment. And to that point, and 1-800-FLOWERS-18F, however we want to refer to them, for their part says they moved for summary judgment on everything. So I'll take that at face value. I think that's a fair characterization. Whether or not it was substantially sufficient is another question, but I think they asked the District Court for summary judgment across the board. Yes, Your Honor, and I think that that is a fair characterization. I think it's maybe a little ambiguous, but I think it's certainly fair to characterize it that way. And then I think there's also no question that the District Court's order, the reasoning in the District Court's order does not address the breach of contract claim or doesn't apply to it. But I do think the order does dispose of that claim by granting summary judgment across the board and directing the clerk, not only to enter judgment, but to close the case. And so to the extent we get there, I think it is a final judgment for purposes of appeal and the Court has jurisdiction. And with jurisdiction, I think it's error at a minimum under Rule 56 because it doesn't address the contract claim, it doesn't give a reasoning why it's granting summary judgment on the contract claim, and clearly the release in res judicata don't apply to it. Right, so even if the District Court, your view is that even if the District Court got the release issues correct, the breach of contract claim can't fall under the same rationale because that claim is based on the release itself. That's correct. I think the opening language for the release says barring the obligations in this settlement agreement, here's what is covered by the release. So there's really no possible argument that the breach of contract claim is covered by the release. And so at a minimum, the Court, I think, needs to reverse, at least on that limited ground before we get to the judgment. Is that essentially an alternative argument? I mean, what's the breach? The breach deals with 18F's use of the mark in certain advertisements post the settlement. So it's separate from the keyword bidding issue. It's a separate use of the mark that's specifically covered by the settlement agreement. So that's why those claims are separate. So moving on to the res judicata release argument, which is really the bulk of the merits here. Both the release and res judicata cover causes of action or claims that could have been asserted in the previous litigation. The District Court agreed that it did not apply to future accruing claims. There's really no dispute, I think, based on the language that it does not apply to future accruing claims. The central question becomes whether these keyword bidding claims here, the cause of action for those arose before the settlement. And I think the answer is clearly no. A cause of action is a specific set of operative facts that give rise to a claim. The question really is, can a claim stand on its own? And I think as the Second Circuit articulated in TechnoMarine, a claim is not precluded if it's either based on new facts sufficient to state a claim on their own without the need to incorporate facts. Can you just walk through this for a moment with me? So the operative provisions, as I understand it, are paragraph three. At the very end, it says, for avoidance of doubt, this paragraph does not apply to bidding on purchase or use of keywords. So basically it's saying there's prohibited conduct under this agreement, but this isn't part of it, right? For paragraph three, correct.  And then there's this kind of odd paragraph five, odd to my characterization, where it says if your opponent goes to the FDC and gets them to agree, they're allowed to engage in this keyword business, right? No, paragraph five says if the FDC agrees, then the parties will agree to a future agreement barring AT&T's use of, or use of, edibles marked in keyword bidding. All right, I'll accept that friendly amendment. But then it says if the FDC doesn't approve it, this paragraph null and void, and I guess the FDC didn't approve it, right? And so it's null and void? There's a factual dispute about whether the FDC did or didn't, but for purposes of the appeal, I think it's irrelevant whether they did or not. We can assume that they did not. So paragraph five just goes away? That's correct. All right, and then the only other relevant paragraph is the one that says, which limits it to past conduct, right? That's correct. And so what were you all trying to do with this keyword issue there? You exempt it from the prohibited conduct, you have this FTC thing, and then it only applies to, what was the thinking there? Well, I obviously can't read counsel's mind back then I was involved, but I can say as far as my understanding is, there was a dispute between the parties about whether it was allowable under antitrust law, I think, or the FTC's authority, whether the FTC would allow this sort of keyword bidding prohibition between two parties to be approved. The FTC, in this case, denied it. I will say the Second Circuit later said that these sorts of agreements are allowable, but at the time there was a question about that, and so they settled the agreement, they settled the litigation at the time, which covered a variety of different activities, and they said, we will go to the FTC, we will see if the FTC will allow us to prohibit 18F from utilizing edibles marks. If they don't, then it's effectively as if there's no agreement at all, and we're back to where we are. And I think the difference is, if the FTC had approved it, then 18F would have had a contractual obligation, a contractual prohibition on utilizing edibles marks in keyword bidding. Without that, then they may, it hasn't been answered yet, may or may not have an obligation under the Lanham Act not to use edibles marks. But that also requires, obviously, likelihood of confusion and other elements that wouldn't have been present under a contractual prohibition. So your position, I want to make sure I understand it, with regard to the release, is that the district court erred because, factually, this complaint and the trademark allegations in this complaint were based, in part, on 18F's acquisition of Sherry's after the execution of the release, and the release has language which says, arising out of any facts and matters occurring prior to the execution of the agreement that were asserted or could have been asserted in the 2014 litigation. The 2014 litigation is my addition to the, right? In part, Your Honor, I think Sherry's Berries is certainly part of it, though I don't even think it's necessary. I think when we talk about Lanham Act claims, including trademark infringement, it's the use of the mark that is kind of the sine qua non of the claim. And so any use of the mark after the settlement agreement is what is actionable. Whether or not you succeed on that claim in demonstrating the elements is a separate question. And I think the operative, the really operative language for the release is that it only applies to claims that the parties had, have had, or may hereafter claim to have had. So if the claim itself did not accrue prior to the settlement, then it is not released. And under Georgia law, while you can release future claims, that needs to be expressly set out. And the cases that 18F cites in the brief give the roadmap for doing that, utilizing future language. And, of course, 18F was represented by a sophisticated counsel. They know how to do that if they had intended to do so. Does the, does the release have a choice of law clause? Um. Because you refer to Georgia law. That's, that's fair enough, Your Honor. I don't have it in front of me. I'd have to double check. It may, the choice of law clause may be another, but I think many jurisdictions, while they allow, again, the release of future claims, it needs to be expressed. And here, clearly, the language is retrospective, not prospective. Okay. Thank you. All right. Thank you very much. Thank you, Your Honor.  Mr. Hooker. Good morning. Charles Hooker on behalf of 1-800-Flowers. Under Edible Arrangements reasoning, if the district court had held a trial and entered judgment against all of Edible Arrangements keyword claims asserted in the 2014 litigation, Edible Arrangements could turn around and the very next day sue 1-800-Flowers for the very same claims because 1-800-Flowers continued bidding on Edible terms as keywords with Google. That is fundamentally at odds with the doctrine of res judicata. I'm not sure that it is. I mean, if you're not releasing future claims, you're only releasing claims that were, could have, or could have been asserted based on conduct up to the date of the agreement, right?  But if you continue, if the parties don't settle the keyword bidding claims, and they didn't because paragraph five is now null and void, and you don't resolve those through a contractual agreement, it doesn't prevent either side from suing on the same conduct going forward. Like, what am I missing? I think there's a few things, Your Honor. First, this isn't a case like Judge Newsom authored, and probably you all have authored cases like this, where the dismissal incorporated into it the settlement agreement, or it was a consent judgment that included some sort of limitation in it. Here the dismissal was with prejudice as to all claims pleaded. So that's as to res judicata. Sure, but if you engage in the same conduct, and the reason I mentioned Sherry's was that at least with Sherry's, that is an acquisition by 18F that post dated the release. If the release could not have taken care of, I don't think, claims that could not have factually accrued before the release was executed. I think the future accrued is the question. The cases define a claim as one where there's an operative nucleus of operative fact, or the claim could have been litigated. And here, the very same conduct is at issue in the 2014 litigation as the conduct here. The very same conduct, or the same kind of conduct? That's a great distinction, Your Honor. I think it's important. It's literally the same conduct. What the claim that they are making is, is that bidding on an edible term, the word edible, the words edible arrangements, through Google, a consumer never sees it, it doesn't appear in an ad, it just triggers an ad to be served. If you type in edible arrangements, just like if you typed in Ford looking for a car, you might be served ads for Chevrolet. That is the conduct at issue. That is what is alleged to infringe, and that is the very same conduct. They have not pointed to the district court or to this court to any conduct that is different. That is the... But there was no resolution of the validity or legality of 18-F's conduct through the 2014 release. That wasn't adjudicated. Well, they released that claim because it was broad. Up to that date, because the release language says, in part at the very end, arising out of any facts and matters occurring prior to the execution of this agreement that were asserted or could have been asserted in the litigation. So if the keyword bidding postdates the release, how is that captured by this language in the release? So that claim had accrued. It could have been litigated, and it was litigated. The 11th Circuit cases, like Kobataki and NRA Managed Care, had release provisions very similar if not identical. Wasn't NRA Managed Care, though, a conspiracy case? It was a conspiracy case and an ERISA case, Your Honor, and the conspiracy continued on after the release. But, I mean, do we have a conspiracy allegation here? No, we don't. So, I mean, I don't know. Maybe I'm being simpleton, but that seems different to me. I mean, the Lanham Act prohibits individual acts of infringement, right? And some of them may predate the release, some of them may postdate the release, but we definitely don't have just this never-ending stream, this seamless web of conspiratorial activity. Well, Your Honor, that's not right with respect to the Lanham Act. I know that opposing counsel makes that argument. That is not what 15 U.S.C. 1114 says. It simply prohibits certain conduct and says that someone engaging in such conduct shall be liable in a civil action. It doesn't say that each new act creates a new cause of action. Well, it does hold the defendant liable any time he uses in commerce any reproduction, counterfeit copy, recolorable imitation, blah, blah, blah, blah, blah. I mean, isn't each use a discreet act? It is a discreet act, but it doesn't give rise to a new claim. If I can return to Judge Jordan's question, in Kobataki, as well as in NRA Managed Care, the release clauses included language like, in Kobataki, arising from the beginning of time to present, so cutting it off presumably at present for claims that had accrued at that point in time. In NRA Managed Care, the release said arising on or before the effective date. But in NRA Managed Care, following up on Judge Newsom, the conspiracy was held to be continuing, but the ERISA claims were held to be discreet, and they were allowed to go forward. Isn't this case more like the ERISA claims than it is the conspiracy claim? No, not at all, Your Honor, because the ERISA claims had not accrued yet. There hadn't been, for example, an exhaustion of administrative remedies. They literally could not have brought the ERISA claims in that case. They could have, and they did bring the conspiracy claims in that case. The same nucleus of operative fact, the same claim. And so that's why those claims were held to be released, even though... If your client wanted to be clear about the fact that this was going to be forever, because I guess basically you're saying you can never be sued for this ever, right? Yes. If it's released, it's released. Forever.  Wouldn't, certainly the release could have said that. Why didn't it just say that? The release could have said that, but the opposite is also true in paragraph 3, as Your Honor referenced earlier. There's an express carve-out for the keyword bidding, and it could have been included there, but it was not. But, I mean, it's just odd to think that that means that Edible can never sue you for whatever the validity of that claim is, but can never sue you for a keyword bidding claim in the future, no matter when it takes place. If it's 40 years from now and both companies are still around, they can't sue you. Well, only as to the use of the term Edible or Edible Arrangements. That was an issue in the prior case. That's what they claimed in the prior case, and that's what was dismissed with prejudice, and that's what was released. So it's not as expansive as any keyword. Isn't that the name of their company? Isn't that the mark they use? To say it's only that, I guess that's true, but that's kind of a big deal, right? Well, it's really not. Maybe the table said a little bit, which I didn't get to, but this is a common practice in the industry. Edible Arrangements bids on all of 1-800-Flowers brands. Every competitor in this space does it. Again, the term does not appear in the ads. So the test, as Mr. Bedard said, is whether there's a likelihood of confusion. Courts generally come out that if the term is used in the ad, so that you're suggesting an association or an affiliation between the brands in some way, that might generate confusion. But generally, merely bidding on a competitor's term, which everyone does across all sorts of industries, just doesn't generate confusion. You've got a fair amount of authority on your side for the proposition that your conduct doesn't violate the Lanham Act. Correct. We're not here on the merits. That's the problem.  We're here on something before we get to the merits. I agree. I agree, but I was responding to Judge Corrigan's question about that. I would like to address the Sherry's Berries point. So, there is nothing in the record that suggests that the acquisition of Sherry's Berries changed the conduct in any way. 1-800-Flowers operates 18 different brands. They operated probably 17 of those at the time of the 2016 agreement. The most direct competitor with edible arrangements is a brand called Fruit Bouquets. And merely adding one brand that sells dipped strawberries, when Fruit Bouquets sells arrangements of fruit that compete much more directly with edible arrangements, doesn't change anything about the keyword bidding at issue. Can we talk about the breach of contract claim? Yes. That has to be error, right? So, in some way, shape, or form, I mean, if the district court, if the, I assume that you move for summary judgment on all of the claims. Correct. But the district court is obliged to provide a reason for why you're entitled to summary judgment on each and every claim. It didn't provide a reason at all. So isn't this, at the very least, a partial remand to the district court to explain its decision on the breach of contract claim? So the way that courts have typically dealt with that, there's a Seventh Circuit case that says that in those less than perfect circumstances where a district court fails to articulate its reasons, under Rule 56, the court of appeals can review the record to determine what facts the district court found or didn't find, construing the evidence in the light most favorable to the non-moving party. That's Whitlock v. Brueggemann, 682 F. 3rd, 567 and 574, and it references a Supreme Court decision. So, on that point, then, on what ground did you move for summary judgment on the breach of contract claim? Yes, Your Honor. We moved on it in our motion. We moved on it for lack of a showing of fact of damage, lack of proof of harm, lack of causation, and lack of any calculation of damages. Our motion was about one page, so Mr. Bedard's correct, there was a mention, there was only mentioned in the motion, however, we spent pages and pages in our opening brief and in our reply brief going chapter and verse through the ways that they failed to make any showing on their things and their expert didn't calculate damages. He assumed causation, he assumed liability, he assumed harm, all of those things. So, this court could affirm under the right for any reason rule based on those arguments. I think that Judge Calvert got the ultimate decision right, but I agree that she did not articulate the reasons under Rule 56. Judge Calvert, actually, originally in her order denying motion to dismiss, kind of agreed with the other side and then her summary judgment order says, well, that was motion to dismiss, this is motion for summary judgment, but I couldn't really tell what was new, what was before her that wasn't before her at the motion to dismiss stage. Well, there's an entire record before her on summary judgment and there just wasn't on the cross motions to dismiss the counterclaims. I think that her order on the counterclaims is more properly read as her saying merely filing a complaint when there's a release clause doesn't necessarily constitute a breach and that's really more of a defense. So, she had an entire record before her on summary judgment. All right. I'll accept that. Let me ask you my last question and that is, do you agree that if the release issue doesn't go your way, that res judicata ipso facto doesn't go your way? Absolutely not, Your Honor. Those are completely separate issues. That was the point that I was trying to make at the beginning with the Consumer Protection Bureau case where this is not one of those cases where the settlement agreement has been incorporated into the dismissal. This is just a pure dismissal and the cases talk about when there's no limitation on the dismissal, you look at the claims that were made, you look at the factual predicate for those claims. If they share the same factual predicate and if the claims could have been litigated or were litigated in the prior litigation, then it's the same claim. Edible Arrangements repeatedly has referred to, well, this is a type of conduct, but it's somehow different here or they're really the same claims. And they've attempted to rest their case on only a temporal distinction, before and after. But they've drawn no factual distinction. There's no difference in the operative fact. Edible Arrangements had an opportunity and did fully litigate the claims before it or that it wanted to bring with respect to keyword bidding on Edible and Edible Arrangements as marks. They dismissed that claim. What is the best case you think you have in a scenario, for res judicata purposes, in a scenario where you have alleged substantive violations that result in a final judgment, but then same substantive allegations which post-date the final judgment, and a court says res judicata applies? I think the Oreck versus Dyson case from the Fifth Circuit, that was a Lanham Act case. It was a Section 43A claim on false advertising where the Oreck said the Dyson's don't lose suction ads were false. That case settled. Dismissal with prejudice was entered, and five months later, Oreck came back again claiming that that same ad and another ad that said most lightweight vacuum were false. And the court said, even though the conduct continued under the Lanham Act, same conduct, and even though you're asserting that there's some kind of new ad at issue, the most lightweight vacuum ad, it's still barred by res judicata because you had the opportunity. The factual predicate was there. All of the elements... But how could you... But to question the Fifth Circuit's decision, I haven't read it. But how could you have brought that claim for an ad that didn't yet exist? That's what I don't get. It did exist at that time, Your Honor, to clarify. But here, they claim that some of the keyword bidding took place afterwards. Correct, but it's the same conduct. There's nothing that's been shown to be new. They have an entire record. There were volumes and volumes of keyword bidding reports. These are smart guys on the other side. They could have found, if there were some factual distinction, some factual predicate that didn't exist in the first case that does exist in this case, you would know about it. They have not pointed to that. That is completely absent from the record, and it's shocking that it is if they believe that there's something different about this claim. It's the same factual predicate. And the cases consistently say that when you have the same factual predicate, the same nucleus of operative fact, it's the same claim, and it's barred by res judicata. And in this case, also barred by the release. If I could make one final point with respect to the release argument, it's that paragraph 18, Judge Corrigan was asking about the relevant provisions. Paragraph 18 in the settlement agreement says that the agreement will be binding on all future subsidiaries and affiliates and that sort of thing. So under the release, the Sherry's Berry's question is an easier question because it's very clear that it's there, that brand is incorporated into the agreement. Thank you very much. Just a few quick points, Your Honors. I'll start. Mr. Hooker mentioned the Oreck case from the Fifth Circuit. I actually think the Court should really look at the Fifth Circuit's later opinion and retract retractable technologies in which it distinguished Oreck and said the problem with Oreck was that the advertisements were made before that litigation concluded. Whereas in retractable technologies, the defendant in that case renewed its conduct after the resolution of the earlier litigation, and that was the distinction. And in retractable technologies, they said those claims aren't barred. So I would start there. Two, I think it's helpful to focus on a distinction that's maybe getting messed up when we talk about res judicata. There's a difference between claim preclusion and issue preclusion. Mr. Hooker mentioned we could have gone to trial all the way on the merits, gotten a judgment, again, you know, lose the case and then turn around and sue them again. That's only true if that judgment resolved the issue of keyword bidding. If, to put another analogy, if somebody, if a company has been dumping chemicals into a river and does it every single time and they're sued by the regulator for damages and they lose, and the regulator loses, it depends on how the regulator loses that determines whether they can sue them if the company continues to dump into the future. Each action gives rise to a new claim. And that's true here in the Lanham Act. Mr. Hooker mentioned that the Lanham Act doesn't necessarily give rise to a new claim with every action. We've cited cases from a variety of jurisdictions under the Lanham Act, under false advertising, trademark infringement, any sort of kind of protected action, patent infringement, that each use of whatever the protected material is, is what's giving rise to a new claim. And then just lastly, I think, thinking about really what the consequence of 18F's argument here is, is that under the language of this release, 18F could acquire any new brand that was keyword bidding and bring it into the future, and it could be an asset sale, it could be anything else, and bring them into their corporate family and all of a sudden now Edible could not sue whatever that brand is. It doesn't square up with the language of the release, with the doctrine of claim preclusion, and so we would ask that the court would reverse, unless the court has any other questions for me. No, we don't. Thank you. Thank you very much. Thank you both. We're in recess.